```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
LUCILA RIVERA and MARIANO LOPEZ,                            :
                                                            :
                        Plaintiffs,                         :
                                                            :           05 Civ. 6824 (GEL)
                -v.-                                        :
                                                            :           OPINION AND ORDER
ATLANTIC CITY MEDICAL CENTER,                               :
                                                            :
                        Defendant.                          :
                                                            :
------------------------------------------------------------x
```

Chad Dickerson, Juan A. Baez, P.C., New York, NY,
for Plaintiffs.

Yann Geron, Fox Rothschild LLP, New York, NY,
for Defendant.

GERARD E. LYNCH, District Judge:

  Plaintiff Lucila Rivera was injured when she slipped and fell on the boardwalk in Atlantic City, New Jersey, breaking her knee. Rivera and her husband, Mariano Lopez, bring this action against the Atlantic City Medical Center, now known as AtlantiCare Regional Medical Center ("ACMC"), where Rivera was treated and released, claiming that Rivera was injured due to negligent treatment at ACMC. ACMC moves to dismiss for lack of personal jurisdiction, improper venue, and ineffective service of process. The motion will be granted because the Court lacks personal jurisdiction over defendant.

## DISCUSSION

  In a diversity case, a federal court may exercise jurisdiction over a nonresident defendant if she is amendable to process under the law of the forum state, provided that the exercise of jurisdiction is consistent with the requirements of due process. Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameris, No. 03 Civ. 1681, 2004 WL 2199547, at *5 (S.D.N.Y. Sept. 29, 2004). Thus, it is first

necessary to decide whether New York law permits the exercise of jurisdiction over defendant.

It is undisputed that ACMC, a New Jersey corporation whose sole places of business is in that state, is not subject to the general jurisdiction of the New York courts under N.Y. C.P.L.R. § 301, because it does not do business in New York in a manner so "continuous and systematic" as to be considered "present" in the state. Northrop Grumman, 2004 WL 2199547, at *6. Plaintiffs accordingly must rely on the specific jurisdiction conferred by New York's long-arm statute, C.P.L.R. § 302. Plaintiffs in fact rely only on one of the subsections of that statute, section 302(a)(3)(ii), which permits New York courts to exercise personal jurisdiction over a nondomiciliary defendant, who "commits a tortious act without the state causing injury to a person or property within the state . . . , if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Plaintiffs contend that the requirements of this statute are satisfied, because ACMC's allegedly tortious act caused injury in New York, by causing Rivera to fall a second time after returning to New York by bus; ACMC should have expected such a consequence because it had reason to know that Rivera was a New York resident; and ACMC, as a hospital doing business in a city with a significant tourist trade, derives substantial revenue from out-of-state visitors.

The decision of the New York Court of Appeals in Ingraham v. Carroll, 90 N.Y.2d 592 (1997), is dispositive of this argument. In Ingraham, a New York plaintiff sued a Vermont physician for the wrongful death of his wife, who had allegedly been treated negligently by the defendant in Vermont, on referral from her New York physicians. The defendant was aware that his patient was from New York, and he "frequently" saw patients referred to him from a New York HMO. Id. at 595, 598. Nevertheless, the Court held that the defendant was not amenable to suit in New York under section 302(a)(3)(ii).

The Court assumed, without deciding, that defendant's alleged malpractice caused injury in New York, when his recommendations for treatment were followed by the decedent's New York primary

physicians and her cancer spread in New York, id. at 597, and further concluded that because defendant was aware that his patient was from New York and was being treated in New York under his recommendations, he expected or should reasonably have expected that his actions would have consequences in New York, id. at 598. The Court ruled, however, that the third requirement of the statute was not met, because the defendant did not derive substantial revenue from interstate commerce. Id. at 598-600

This ruling was not based on the volume of the defendant's receipts from New York patients. Rather, the Court concluded that the "interstate commerce" provision of the statute was intended to "preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but 'whose business operations are of a local character.'" Id. at 599, quoting 12th Ann. Report of N.Y. Jud. Conf., at 342-343. Noting that "[t]here is some support for the notion that the provision of medical services may *never* meet the definition of 'commerce' for jurisdictional purposes," id., citing Markham v. Gray, 393 F. Supp. 163, 166 (W.D.N.Y. 1975), aff'd on other grounds sub nom., Markham v. Anderson, 531 F.2d 634, 637 (2d Cir. 1976) (emphasis added), the Court found it sufficient to rule that the "because the [defendant] renders medical services wholly within his own State, he cannot be said to be engaging in interstate commerce." Id.

This was so even though defendant saw patients from New York on a regular basis:

> The situation where a local physician treats a nonresident patient is by no means uncommon. For example, local physicians may treat nonresident patients traveling on vacation, or, as in this case, because the physician's office is located close to a State border. Perhaps the most common example is where a physician is so outstanding a specialist in a particular field as to attract numerous referrals from other physicians. Such a physician may treat patients from many different States on a daily basis.
>
> The diversity of a physician's pool of patients, without more, cannot convert an otherwise local practice to an interstate business activity. A physician does not sell his or her services in interstate commerce by treating

>unsolicited patients that travel into the physician's home State seeking health care. . . . Unlike a manufacturer who introduces a product into the stream of commerce expecting it to be sold in other States, a physician treating patients in his or her home State is providing a service that is inherently personal, and local, in nature.

Id. at 599-600.

Since the question concerns the interpretation of a New York statute, this ruling by New York's highest court is controlling.[1] Here, as in Ingraham, plaintiff Rivera was treated by a New Jersey hospital in New Jersey. Like the physician in Ingraham, ACMC was aware that plaintiff was from New York and would return there to suffer the consequence of any malpractice committed by ACMC, and indeed it can be assumed (as plaintiff alleges) that ACMC, like the physician in Ingraham, had "frequent" occasion to treat New York or other out-of-state patients who were visiting the area to take advantage of the tourist attractions of Atlantic City. But for purposes of New York's long-arm statute, "[t]he diversity of a physician's pool of patients, without more, cannot convert an otherwise local practice to an interstate business activity," and the treatment even of out-of-state patients in a local facility is "inherently personal, and local, in nature," and does not satisfy the "interstate commerce" requirement of section 302(a)(3)(ii).[2]

Since the Court lacks personal jurisdiction over defendant, the case must be dismissed, and it is unnecessary to address defendant's other arguments.

---

[1] The meaning of "interstate commerce" for purposes of federal constitutional law may be broader than the definition adopted in Ingraham, but is irrelevant to the interpretation of the phrase in the New York statute.

[2] Plaintiffs' citation of a subsequent Court of Appeals decision, LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210 (2000), is unavailing. In LaMarca, the Court distinguished Ingraham in the case of a "Texas corporation with a manufacturing facility in Virginia," holding that such a company "is inherently engaged in interstate commerce." Id. at 215. Remarkably, plaintiffs fail to discuss Ingraham, which is described and distinguished in LaMarca, and which plainly is more directly analogous to the facts of this case.

## CONCLUSION

Defendant's motion to dismiss for lack of personal jurisdiction (Dkt. No. 5) is granted, and the Clerk is respectfully directed to enter judgment accordingly.

SO ORDERED.

Dated: New York, New York
       March 30, 2006

                                                  _____
                                                  GERARD E. LYNCH
                                                  United States District Judge